**14]**     *WOOD COUNTY, AUGUST TERM, 1831.

JUDGES—COLLETT AND WRIGHT.

LAKIN *v.* GUN AND WIFE.

Case—nuisance—slander—disturbance—special damage—good morals.

Case cannot be sustained by a man who has made an appointment to meet a woman in the woods at night to hear from her secrets worth knowing, against persons who had secreted themselves near the place of meeting, for suddenly rising and shouting, and hallooing, blowing horns and ringing bells, to his disturbance. Such acts are neither slander nor libel. A design to caricature not executed is not a libel.

No suit in such case will lie for a nuisance, as the disturbance is not of any certain or fixed right.

Good morals do not require of courts to countenance such stolen interviews, or to sustain actions for such annoyances.

Special damages laid without a case to which they can be attached are of no avail.

ACTION on the case. The plaintiff's declaration contained three counts; in the *first* he complained, "for that whereas the said plaintiff before and at the time of the committing of the grievances hereinafter mentioned, was of a good character for virtue and

chastity, and was as such accepted and received, yet the said defendants well knowing the premises, for the purpose of injuring the plaintiff, and to cause it to be believed and suspected that said plaintiff was vicious and unchaste, did, on the first day of March, 1830, at, &c., confederate and conspire together, and did then and there for that purpose, procure and bribe one Parmelia Sawyer, a spinster, to make an appointment and agreement with the said plaintiff to meet her at some private and secret place agreed upon, under the false pretence that she, the said Parmelia, had something secret to communicate to the said plaintiff, and the said plaintiff, afterwards, on the evening of the same day, went to the place appointed and agreed upon, as aforesaid, between the said plaintiff and the said Parmelia, by the artful procurement and bribery of the said defendants, as aforesaid; and when the said plaintiff arrived at the place appointed as aforesaid, the said defendants contriving and wickedly and maliciously intending to injure the said plaintiff, and cause him to be suspected and believed to be vicious and unchaste, had secreted themselves around the said place so appointed, and arose around the plaintiff, and made a great noise, by shouting and hallooing, blowing of horns, firing of guns, and ringing of bells, and did then and there cause it to be suspected and believed, contrary to the fact, truth and intention, that the said plaintiff was then and there caught in the act of fornication, with the said Parmelia; whereas, in fact, such suspicions and belief were wholly without truth and foundation, and wholly caused by such artful and wicked and ma-*licious conduct of the said defendants, and by **[15** their procurement and bribery as aforesaid. By means of the committing of which said several grievances by the said defendants as aforesaid, he, the said plaintiff, has been and is greatly injured in his good name, fame and credit, amongst all his neighbors and acquaintances, and caused to be suspected and believed to be vicious and unchaste; and by reason thereof, his said neighbors and acquaintances have wholly refused to have any transaction, acquaintance or discourse with him, the said plaintiff, as they were before accustomed to have, and otherwise would have had; and also, by reason thereof, one T. P. Browning, who, before and at the time of the committing of the said grievances, was about to trust and credit to the said plaintiff a large amount of goods, viz.: to the amount and value of $1,000, for the purpose of making a large profit on the same by merchandizing and otherwise, would have credited the said goods to the said plaintiff, afterwards, &c., wholly refused to trust and credit the said plaintiff with goods as aforesaid, and

thereby said plaintiff lost and was deprived of all the profits which he might have made on the sale of said goods, and hath been and is otherwise injured."

2*d.* "And for that also, &c., the said defendants further conspiring and confederating together, and craftily and subtily, wickedly and maliciously intending to injure and oppress the said plaintiff, procured and bribed one ————, to entice and persuade the said plaintiff to meet her at a certain place at Waynesfield in said county, where she artfully pretended she had 'something of importance and of a private nature to communicate to him, and accordingly afterwards, to wit, &c., the said plaintiff met her at the said place by her proposed as aforesaid, and when there the said defendants, having previously secreted themselves for that purpose, at and around the said place of meeting, &c., then arose and made a great noise by shouting and hallooing, and by blowing of horns, firing of guns, and ringing of bells, thereby craftily, wickedly, and maliciously intending and causing it to be suspected and believed by his neighbors, &c., that the said plaintiff was by them caught in the very act of fornication ; and the said defendants, by means of such shouting and hallooing, and blowing of horns, firing of guns, and ringing of bells, did there greatly annoy and disturb the peace and quietude of the said plaintiff for a long space of time, viz. : two hours, and said plaintiff in fact says, that all such suspicions and belief as last aforesaid, were wholly without truth or foundation, and wholly caused by such artful, wicked and malicious conduct of said defendants, and *by their procurement and bribery as aforesaid. By means of the committing, &c., said plaintiff is injured in his fame and credit."

3*d.* "And also that the defendants while the plaintiff was peaceably in his lawful pursuits, surrounded the plaintiff at a short distance, to wit : at the distance of 10 rods, and then and there made a great noise and shout, by hallooing and shouting, and by firing guns and blowing of horns, and ringing bells, and thereby greatly disturbed and incommoded the plaintiff in the enjoyment of his peace and quietude, for a long space of time, viz. : two hours, by means of which grievance the said plaintiff was during all said time prevented from attending to his lawful and usual pursuits, to wit : at Wood, to his damage, $1,000."

To this declaration there was a general demurrer and joinder.

The demurrer was elaborately argued by

*Dickinson* for the defendants, and by

*Coffinberry* and *Powell* for the plaintiff.

Lakin *v.* Gun and Wife.

WRIGHT, J. delivered the opinion of the court. We have been much troubled upon examining the declaration, to find out what class of actions this belongs to. The counsel for the plaintiff have not entirely relieved us—one of them contending the action is case for a *nuisance*, and the other contending it is an action on the case for *defamation*.

Is it for slander? The gravamen as laid does not appear to be for words spoken. If it be for words spoken or written, the words must be set out in substance, that the court may judge if they are actionable. It is not sufficient to say, that the defendants shouted or hallooed, without setting out the words uttered and published. It is true, one may be defamed by signs or pictures. But, if by the former, they must be described and conduce to the establishing some charge or crime, which if uttered, would sustain an action : and if by the making and exhibiting pictures, the pictures must be fully described, and the object set out fully in the declaration. It is not sufficient to set forth a design or conception from which an artist might draw a picture, that would make a person ridiculous, without charging that the defendants had formed and executed the design upon canvas or other material. It is conceded that the transaction described in the declaration presents the plaintiff in a point of view very ridiculous, but the most ridiculous parts of the farce are his own acts and conduct. Drawn by an artist on canvas or paper, without caricature, the scene would excite mirth at the expense of the plaintiff ; but no picture has yet been drawn, except by the plaintiff in his declaration, the subject for it, owing in *some measure to the simple credulity, or something worse, [17 of the plaintiff, is made to exist in idea. We do not see how, in law, this suit can be sustained as one for defamation.

Is it an action for a nuisance? A man may be annoyed by an act of another which impairs his full enjoyment of some acknowledged right, and he who occasions the annoyance will be liable for a nuisance. But what is the case made in this declaration? What fixed right or easement does the plaintiff set out, in the enjoyment of which he has been disturbed by any act of the defendants ? The assignation made with a lady in the field, wood, or elsewhere, with a view of hearing from her secrets of importance, is the alleged lawful calling, in the enjoyment of which "he was disturbed in his peace and quietude ;" but what *right* was disturbed ? One to land, to the air, to the light, to the *tete-a-tete?* We cannot tell ; and the counsel, who seem to have studied the case profoundly, leave us in darkness as to this point. It is alleged that the plaintiff was pre-

vented for two hours from attending his lawful and usual pursuits. We do not say a man may not have lawful pursuits in the bushes after night with a female, or but that he may be receiving from her secrets of importance. Doubtless it would be uncivil and ungallant to disturb such agreeable interviews, and such disturbance might occasion annoyance, if not shame, and excite suspicion, if it did not carry conviction, that more was in the matter than met the eye; but can we judicially say such stolen interviews accord with good morals, or are so much the usual occupation of the plaintiff, as to afford him relief upon the ground that he has been disturbed or injured in his trade or calling? We think not. If the party were annoyed and shamed at the interruption, doubtless the confused noise tended to increase it, and so far was uncivil and improper. We do not think good policy requires of us, in this new country, to take such affairs into the cognizance of courts of justice.

The special damage in the loss of credit, is not well laid ; it is only a conclusion without any premises. The demurrer is well taken, and judgment is rendered for the defendants for costs.